JOHN L. DICKINSON TESTAMENTARY TRUST FOR ANASTASIA D. PAYNE, ONE VALLEY BANK, NATIONAL ASSOCIATION, EDWARD I. GOLDSMITH AND RAY MARSHALL EVANS, JR., TRUSTEES, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Dickinson Testamentary Trust for Payne v. Commissioner
Docket Nos. 39793-87, 39794-87, 39795-87
United States Tax Court
T.C. Memo 1993-62; 1993 Tax Ct. Memo LEXIS 65; 65 T.C.M. (CCH) 1946; February 24, 1993, Filed *65 Decisions will be entered for petitioners. For petitioners: Louis S. Southworth II and John H. Lawler. For respondent: James D. Hill. WHALEN
WHALEN
MEMORANDUM OPINION WHALEN, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Docket No. 39793-87 -- John L. Dickinson Testamentary Trust
Tax Year Ended
Deficiency
December 31, 1983
$ 18,034
December 31, 1984
9,484
Docket No. 39794-87 -- John L. Dickinson Trust
Tax Year Ended
Deficiency
December 31, 1983
$ 279,453
December 31, 1984
47,919
Docket No. 39795-87 -- Maude H. Dickinson Trust
Tax Year Ended
Deficiency
December 31, 1983
$ 26,525
December 31, 1984
17,006
The issue for decision is whether the proper taxable entity is one trust per docket number as respondent contends, or three trusts per docket number as petitioners contend; i.e., whether the grantors of these trusts intended, after the death of Anastasia Payne, that the original trusts created for her benefit each be divided into separate trusts for each of Anastasia's three surviving children. The facts have been stipulated and are so found. The stipulation of facts and attached *66 exhibits are incorporated herein by this reference. All section references contained herein are to the Internal Revenue Code in effect for the years in issue. One Valley Bank, National Association, one of the trustees of petitioner trusts, had its principal place of business in Charleston, West Virginia, at the time the petitions consolidated herein were filed. Petitioner trusts were located and administered there. John L. and Maude H. Dickinson were husband and wife for many years and were residents of Charleston, West Virginia. Their immediate family consisted of five daughters, one of whom was Anastasia Dickinson Payne (hereinafter Anastasia). Two inter vivos trusts and one testamentary trust were created by Mr. and Mrs. Dickinson for the benefit of Anastasia and Anastasia's issue inter alia. These three trusts are petitioners herein and are hereinafter sometimes referred to as the Dickinson trusts. On December 31, 1931, Mr. Dickinson created the John L. Dickinson Trust for Anastasia. This trust contains, in part, the following language: I. * * * The Trust hereby established shall continue until, and shall be terminated at the expiration of twenty-one (21) years after *67 the death of the last survivor of GRANTOR'S daughters * * * [Names omitted.] * * * III. * * * The TRUSTEES shall keep the investments of this Trust and the interest of each beneficiary separate for the purpose of accounting and ultimate distribution, but this shall not prevent carrying moneys belonging to the Trust in a joint account, nor making investments in undivided interests in property, real or personal, including securities and loans; and in any payment or distribution, or any question of beneficial ownership of any trust property, or the proper division, allocation, and charging of any expenses of the TRUSTEES, their discretion shall be absolute and their judgment and decision final and binding; and they shall have the power in order to avoid holding for or delivering to any beneficiary a fractional share of stock, or in order to avoid inconvenience from a joint beneficial interest in a note, bond or other property, to determine the money value of such stock, note, bond, or other property, and make such adjustment accordingly as shall seem to them best. * * * The purpose of this instrument is that to the extent of the resources to become available hereunder the beneficiaries *68 from time to time hereunder shall be protected against want. Accordingly, the TRUSTEES are enjoined to avoid speculative investments and to seek security and certainty rather than amount of income in the investments they make, and to consider each individual case and the circumstances at the time being in making determinations concerning disbursing or withholding for investment the income of the Trust funds, and in making determinations concerning the application of moneys disbursed so that the same shall be judiciously used. IV. The TRUSTEES shall hold the property of the Trust hereby created as the same shall exist from time to time for the use and benefit of Grantor's daughter, Anastasia Dickinson Payne, for her life, and after her death for the use and benefit of her issue, if any, share and share alike per stirpes, for life. If said Anastasia Dickinson Payne or any of her issue or any other beneficiary hereunder shall die without issue before the termination of the Trust as to such decedent, the Trust Estate or the interest in or part thereof, as the case may be, theretofore held for the benefit of such decedent shall be held for the use and benefit of the heirs at law *69 of such decedent (or the persons who would be such if the Grantor and his wife, the mother of said daughter, were dead) among the descendants of the GRANTOR, barring any such heir not so descended, share and share alike per stirpes, for life. * * * The TRUSTEES shall have absolute discretion in handling the Trust Estate, all parts thereof, and all income therefrom, having regard to the condition, needs, capacity, judgment, and conduct of each beneficiary and each member of his or her family. They may disburse all or any part of the net income of the Trust Estate, or the share or part thereof held for the use and benefit of any beneficiary to, or for the maintenance, support, use, and benefit, of such beneficiary, or his or her family, or they may if and for such time as they see fit, notwithstanding anything hereinbefore contained, so disburse none of the net income of the Trust Estate, or share or part thereof, held for the use and benefit for life of any beneficiary, and hold the same at their discretion for the use and benefit of such beneficiary or for the use and benefit of his or her successor in right hereunder. * * * Upon the termination of the Trust by the expiration *70 of the time limited in Article I hereof, the TRUSTEES shall distribute and pay, transfer, convey, and deliver the Trust property or the remainder thereof, as the same may then exist, to the respective beneficiaries for whose use and benefit for life the same shall have been held at such termination.
Mrs. Dickinson, in one inter vivos trust instrument dated August 15, 1935, created five trusts for her five daughters. The majority of the language is similar to Mr. Dickinson's inter vivos trust. Some of that language is as follows: The TRUSTEES shall keep the investments of this Trust and the interest of each beneficiary separate for the purpose of accounting and ultimate distribution, but this shall not prevent carrying moneys belonging to all of the Trusts in a joint account, nor making investments in undivided interests in property, real or personal, including securities and loans; and in any payment or distribution, or any question of beneficial ownership of any trust property, or the proper division, allocation, and charging of any expenses of the Trustees, their discretion shall be absolute and their judgment and decision final and binding; and they shall have the power *71 in order to avoid holding for or delivering to any beneficiary a fractional share of stock, or in order to avoid inconvenience from a joint beneficial interest in a note, bond or other property, to determine the money value of such stock, note, bond, or other property, and make such adjustment accordingly as shall seem to them best.
Other language that differs from the John L. Dickinson inter vivos trust is as follows: The TRUSTEES shall immediately divide the Trust Estate made up of the aforesaid insurance policies and stock into five (5) equal parts and set up each part, consisting of a one-fifth (1/5) interest in said policies and stock, as a separate trust fund, thereby establishing five (5) trusts to be designated as Trust No. 1, Trust No. 2, Trust No. 3, Trust No. 4 and Trust No. 5. * * * Trust No. 2, containing a one-fifth (1/5) interest in said policies and stock and all proceeds therefrom and investments or reinvestments thereof as the same may exist from time to time, shall be held for the use and benefit of the GRANTOR'S daughter Anastasia Dickinson Payne for her life, and after her death for the use and benefit of her issue, if any, share and share alike, per *72 stirpes, for life. * * * If any beneficiary of any of said trusts shall die without issue before the termination of the Trust as to such decedent, the Trust Estate or the interest or part thereof as the case may be theretofore held for the benefit of such decedent shall be held for the use and benefit of the heirs at law of such decedent (or the persons who would be such if the GRANTOR and her husband were dead), among the descendants of the Grantor, barring any such heir not so descended, share and share alike, per stirpes, for life.
On March 11, 1953, Mr. Dickinson (who died in 1954) published and declared his last Will and Testament, which included a devise and bequest of the rest and residue of his property to a corporate trustee, who was directed to divide the property and estate into five separate trusts of equal amounts for the benefit of Mr. Dickinson's five daughters. The language utilized in establishing these testamentary trusts is largely the same as that used in establishing the inter vivos trusts. Differing and additional language is as follows: The Trustees shall divide the said rest and residue of my property and estate into five (5) separate trusts of equal *73 amounts, hereinafter called Trust No. 1, Trust No. 2, Trust No. 3, Trust No. 4 and Trust No. 5, respectively, and shall hold, manage, control and dispose of the property which comprises the said trust estates upon the following trusts, and in the following manner, that is to say: * * * (2) to pay to my daughter, Anastasia Dickinson Payne, the said net balance of said income of Trust No. 2, as long as she shall live; * * * (6) if any of my said children shall die leaving issue, to pay the net balance of said income of the trust payable to said deceased child in her lifetime to or for the benefit of the issue of said deceased child, per stirpes; * * * Third: Unless sooner terminated by reason of the event set out in Paragraph Second above, the trusts hereby created shall terminate twenty-one (21) years after the death of the last survivor of the following persons, to-wit * * * [Names of wife, 5 daughters, 10 grandchildren, and 4 sons-in-law omitted.]
In 1974 Anastasia died. She was survived by three children: Anastasia P. Rooke, Andrew A. Payne, Jr., and John L. D. Payne. The trustees of the Dickinson trusts sought legal advice to help them determine how to continue to administer *74 these trusts. Concluding that the grantors intended for a separate trust to be executed for each grandchild, the trustees divided each of the Dickinson trusts into three separate but equal trusts for each of Anastasia's children, for a total of nine independent trusts. No fiduciary income tax returns were filed under the original trust titles naming Anastasia as beneficiary. Instead, the trustees differentiated these Dickinson trusts by listing a grandchild as the primary beneficiary for each of the nine new trusts. Taxpayer identification numbers were applied for and received and these nine trusts were completely independent of one another. Each individual's needs were taken into account when investments and distributions were made. One Valley Bank, as trustee, prepared separate quarterly trust reports for each of the nine trusts and furnished said reports exclusively to the respective beneficiary of each trust. Fiduciary income tax returns were timely filed by the trustees for each of the nine trusts during the years in issue. The deficiencies determined by respondent are determined without regard to the amounts that have previously been paid in taxes, and are on the basis *75 that only three trusts were created for the grandchildren. The Code provides little guidance in situations such as we are faced with herein. Section 641(a) states very generally that Federal income tax applies to "the taxable income of estates or of any kind of property held in trust." The issue before us is primarily factual, with a decision to be made as to the grantors' intent when they created the trust instruments between 40 and 60 years ago. We must look to the instruments themselves to ascertain whether the grantors intended each generation of Dickinsons to be beneficiaries of individual trusts, or whether the grantors intended their grandchildren to be multiple beneficiaries of the original trusts that were created. ; . Respondent relies extensively on an analysis of the singular and plural forms of the words "trust", "trust estate", "beneficiary", "trust property", and the use of the words "share and share alike" in the respective instruments. Petitioners discount this language, citing , *76 in which the Court of Appeals for the Second Circuit found that multiple trusts had been created and noted that the use of the singular or plural forms of key terms was irrelevant under the facts of that case. The court stated: "We do not believe that it would make the least difference in the case at bar, for example, how often, or how consistently, the testator used the singular or the plural, or that he used the word 'shares' instead of 'trusts' to describe the limitations set up in Paragraph Thirteenth (a)." . We agree with respondent that, in looking solely at the language of the instruments, the grantors were only specifically creating the individual trusts for their daughters. The language shows specific detail and concern for providing for the original trusts in favor of the Dickinson daughters, in this case Anastasia. The instruments do not elaborate on the next generation's interests in the trusts except to specify that the grantors' grandchildren are to "share and share alike, per stirpes, for life." Petitioners contend that the intent on the part of the Dickinsons to create individual trusts for each of their daughters carries *77 through and indicates a similar intent for subsequent generations. Petitioners further contend that this intent is supported by the language in all three instruments which specifies that each individual beneficiary's needs are to be taken into account in decisions regarding investments of trust corpus and disbursements of income and corpus. In , affg. , a trust was created by a grandfather and was funded with 1,000 shares of stock for the benefit of one granddaughter and 1,000 shares of stock for the benefit of the other granddaughter. However, the cash dividends from this stock were to be paid to their mother. The trust corpus, i.e., stock, was to be distributed to the granddaughters when they reached the age of 30. The Court of Appeals first analyzed the language of the instrument and held: Whether the instrument created one or two trusts depends upon the intention of the donor as derived from the terms therein expressed. ; * * * Throughout *78 the present instrument all references to the trust are in the singular. This has been considered indicative of the trustor's intention to create but a single trust, even though there be more than one beneficiary. While this terminology is not conclusive, yet, in the face of such designation frequently repeated, indication of a contrary intention should be clear. [; citations omitted.]
The Court of Appeals went on to conclude that there was a single trust created by the instrument in question. The court placed emphasis on the fact that the mother was to receive cash dividends from the trust corpus as a whole, and also that the trustee: treated the trust res as the corpus of a single trust. This is, of course, not conclusive, but it is fair assumption in the usual case that the trustee has been consulted by the trustor in respect to acceptance of the trust and has some knowledge of his intention. In any event, the trustee's construction has not been thought lacking in persuasiveness as to the purpose of the donor. United States Trust Co. v. Commissioner, * * * [; *79 State Savings Loan & Trust Co. v. Commissioner, * * * [. [.]
In the case before us, the language in the instruments indicates the grantors intended single trusts for the benefit of each of their daughters. This language also indicates an intent to create separate, independent interests for each grandchild upon the death of that grandchild's mother. The trustees concluded that Mr. and Mrs. Dickinson's intent regarding individual trusts for the benefit of their daughters carried through to the subsequent generation. After Anastasia's death, the corpus of each of the trusts was physically divided into three equal parts for the benefit of Anastasia's three children. Since that time the trust interests have consistently been treated by the trustees and beneficiaries as nine separate, independent trusts with all legal obligations fulfilled on that basis. In , the Court of Appeals held: In view of the equivocal character of the language of the trust *80 instrument, it is proper for the court to receive parol evidence as to the facts and circumstances surrounding the parties in the creation of the trust and to take into consideration their conduct in dealing with the res, not for the purpose of varying the terms of the instrument but to show the circumstances attending its execution and the position of the settlor at the time to ascertain the sense in which the language in the contract was used. This follows from an application of the well-known rule that where a written instrument is uncertain and indefinite in its contents, extrinsic evidence may be resorted to in aid of its terms and provisions, not to contradict, but to explain it. * * *
We do not know precisely what the Dickinsons' intent was when creating the trusts so many years ago. Their thoughts were clearly centered upon their daughters' interests and not upon their grandchildren's interests. We do know that they intended for each of the children of Anastasia to take an equal share of their mother's trusts' income and corpus independent of the other shares. We also know that the grantors intended for the trustees to exercise their own discretion in many enumerated *81 areas of trust administration as indicated in the language quoted above. We agree with petitioners that the creation of separate trusts for each daughter indicates an intent on the part of the grantors to carry that precedent over to the next generation and create separate trusts for each grandchild. We also agree that the grantors intended to leave as much of the administration of the trusts up to the trustees as they legally could. The trustees sought legal advice and then split each trust into three separate and equal trusts, one for each grandchild. The administration of these nine separate trusts is apparently nonobjectionable. The trustees applied for and received individual taxpayer identification numbers for each trust, filed fiduciary returns and paid Federal income taxes for each trust, gave separate financial statements to the beneficiaries on an annual basis, and took the individual concerns of each beneficiary into account when determining distributions. The record suggests that the trustees reasonably believed, based upon the language in the instruments and their knowledge of the Dickinson family, that Mr. and Mrs. Dickinson intended Anastasia's children to be *82 beneficiaries of individual trusts catering to their individual needs. Cf. . Based upon that belief, the trustees have administered the trusts as nine independent trusts and physically divided the corpus of the trust. We hold that these trusts were properly administered as nine independent trusts for the grantors' grandchildren, pursuant to the intent of the grantors. Decisions will be entered for petitioners. Footnotes
1. Cases of the following petitioners are consolidated herewith: John L. Dickinson Trust for Anastasia D. Payne, One Valley Bank, National Association, Edward I. Goldsmith and John L. D. Payne, Trustees, docket No. 39794-87; Maude H. Dickinson Trust for Anastasia D. Payne, One Valley Bank, National Association, Edward I. Goldsmith and Charles W. Waddill, Trustees, docket No. 39795-87.↩